IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MOUNTAIN CREST SRL, LLC,

                              Plaintiff,

        v.

ANHEUSER-BUSCH InBEV SA/NV,
individually and as successor to InBev SA/NV and
Interbrew S.A. and MOLSON COORS BREWING
COMPANY, individually and as successor to Molson
Canada Inc.,

                              Defendants.

OPINION and ORDER

17-cv-595-jdp

---

Plaintiff Mountain Crest SRL, LLC, which owns and operates Minhas Brewery in Monroe, Wisconsin, is suing defendants Anheuser-Busch InBev SA/NV (ABI) and Molson Coors Brewing Company (Molson Coors) for alleged anticompetitive behavior in Ontario, Canada. The case is now on remand after the Court of Appeals for the Seventh Circuit affirmed in part and reversed in part the judgment dismissing all of Mountain Crest's claims. *See Mountain Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*, 937 F.3d 1067 (7th Cir. 2019).

This court dismissed the case under the act of state doctrine, which prohibits federal courts from invalidating the public acts of a foreign government. The court understood Mountain Crest's challenge to be limited to the so-called "six-pack rule," which prohibits some Ontario liquor stores from selling larger packs of beer or offering discounts for buying multiple six-packs.[1] Because the six-pack rule is embodied in Ontario law, Liquor Control Act, R.S.O. 1990, c. L.18, § 10(3) (Can.), the act of state doctrine required dismissal.

---

[1] *See* Dkt. 60, at 10 n.3 ("[B]oth sides have assumed in their briefing that Mountain Crest's claims under the Sherman Act are limited to restrictions on selling larger packs of beer and

The court of appeals agreed that the act of state doctrine required dismissal of Mountain Crest's challenge to the six-pack rule. But the court concluded that Mountain Crest was also challenging other conduct not implicated by the act of state doctrine. The court did not determine whether the other challenges should proceed but instead directed "the district court [to] address these claims in due course." *Id.* at 1086.

Now defendants have filed a new motion to dismiss all of the claims remanded by the court of appeals. Dkt. 75. For its part, Mountain Crest moves for reconsideration of the decision that its challenge to the six-pack rule is barred by the act of state doctrine, contending that a new bill by the Ontario legislature undermines that decision. Dkt. 73.

The court isn't persuaded that the bill cited by Mountain Crest requires reconsideration of the holding regarding the six-pack rule, so the court will deny Mountain Crest's motion. As for defendants' motion to dismiss, the court concludes that Mountain Crest hasn't stated a claim upon which relief may be granted. Some of Mountain Crest's claims arise out of injuries caused by the Ontario government's conduct, not defendants' conduct. And the remaining claims relate to conduct by an Ontario cooperative that is not a party to this case. Although Mountain Crest includes conclusory allegations in its complaint that defendants were involved in a conspiracy to control the cooperative to harm American beer exporters, conclusory allegations are not enough to state a claim, especially in a complex lawsuit involving alleged antitrust violations. So the court will grant defendants' motion to dismiss.

---

pack-up pricing, so the court has made the same assumption.").

BACKGROUND

A full summary of Mountain Crest's allegations may be found in the court of appeals's decision, *Mountain* Crest, 937 F.3d at 1069–77, and in this court's decision granting defendants' original motion to dismiss, Dkt. 60, at 2–9, so only a brief overview of factual and regulatory background is provided here.

Under Ontario law, there are only two places that an individual may purchase beer for off-site consumption in Ontario: (1) stores operated by the Liquor Control Board of Ontario (LCBO); and (2) The Beer Store, which is operated by Brewers Retail Inc. (BRI). The LCBO is a government agency that regulates liquor sales. BRI is a cooperative of Ontario brewers. The primary members of BRI are Labatt Breweries of Canada and Molson Inc. (Canada), which each own 49 percent of the cooperative. Labatt is a subsidiary of defendant ABI and Molson is a subsidiary of defendant Molson Coors.

The LCBO controls the sale and delivery of beer at BRI stores and establishes specific terms and conditions related to the operation of such stores. When the Beer Store and an LCBO store are in the same community, their inventories differ.  LCBO "ordinary" stores sell wine and spirits as well as beer in packages of six or fewer; the Beer Store may sell larger packages of beer. This arrangement was reflected in a 2000 agreement between BRI and LCBO and is now codified in a 2015 Ontario law.

Mountain Crest entered the Ontario beer market in 2009. Since then, Mountain Crest alleges that its ability to sell its beer in Ontario has been unfairly restricted, both at LCBO stores and at the Beer Store. As for the LCBO, Mountain Crest says that the six-pack rule is harmful, especially to a "value beer" such as Mountain Crest, because it prevents Mountain Crest from offering discounts on purchases for larger quantities of beer. Mountain Crest says

that defendants are responsible for the six-pack rule because they pressured the LCBO into adopting the rule, using tactics that are prohibited under antitrust law. As for the Beer Store, Mountain Crest says that the stores are stocked and laid out in a way that discriminates against Mountain Crest and other American brands not owned by defendants.

## MOTION FOR RECONSIDERATION

Mountain Crest seeks reconsideration of the portion of this court's decision that was affirmed by the court of appeals. Dkt. 73. Specifically, Mountain Crest says that the act of state doctrine has no application to this case in light of a bill passed by the Ontario legislature in June 2019.

The parties disagree about whether Mountain Crest is entitled to a consideration of the merits of its motion. Mountain Crest cites footnote 78 of the court of appeals's decision, in which the court declined to consider any effect that the bill might have, stating instead that "the most expeditious manner of evaluating this development is to permit the district court to address it on remand." *Mountain Crest*, 937 F.3d at 1085. Defendants don't directly address footnote 78, but they contend that Mountain Crest must still meet the requirements of either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure if it wants to disturb the judgment. Rule 59 motions must be brought within 28 days of entering judgment, and Rule 60 motions must be brought within one year or "within a reasonable time," depending on which provision is at issue. Defendants contend that Mountain Crest has failed to meet any of those deadlines.

Rule 59 and Rule 60 apply only to final judgments. After the court of appeals remanded the case, "the earlier final judgment became interlocutory. What had been a judgment on all claims in the case became a judgment on only some claims. And without a Rule 54 certification,

that judgment was not final." *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 408 (7th Cir. 2018). So the court need not determine whether Mountain Crest's motion complied with the time limits in Rule 59 or Rule 60. Rather, the more appropriate question is whether reconsideration is permitted by the mandate rule and the law of the case doctrine, which "prohibit a district court from revisiting on remand any issues expressly or impliedly decided on appeal." *United States v. Fox*, 783 F. App'x 630, 632 (7th Cir. 2019). In this case, the court of appeals did decide that the act of state doctrine precluded some of Mountain Crest's claims. But footnote 78 appears to give this court permission to consider the June 2019 bill, so that is what the court will do. *See also Carmody*, 893 F.3d at 408 ("[T]he law-of-the-case doctrine may yield if an intervening change in the law, or some other special circumstance, warrants reexamining the claim." (internal quotation marks omitted)).

Mountain Crest attached a copy of the bill to its motion. Dkt. 73-1. The bill "enacted an amendment to the Liquor Control Act terminating the 2015 Agreement," but "[t]he effective date of the termination is to be announced by the province's Lieutenant Governor" and "this date has not yet been announced." *Mountain Crest*, 937 F.3d at 1077.

The court is not persuaded that a bill that has not been given legal effect is enough to require a different result in this case. The court of appeals described the act of state doctrine as "a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under that sovereign's laws." *Id.* at 1080 (internal quotation marks omitted). The court articulated a two-part test for determining whether the doctrine applied in this case: (1) "whether the six-pack rule is attributable to the government of Ontario for the purposes of the act of state doctrine"; and (2) "whether a decision in Mountain Crest's favor

would invalidate those acts." *Id.* at 1083. The court concluded that the answer to both questions was "yes."

The June 2019 bill, even once it takes effect, does not change the answer to either question. The six-pack rule is still attributable to the government of Ontario and a decision in Mountain Crest's favor would still invalidate acts of the Ontario government. Mountain Crest doesn't argue otherwise, and it doesn't point to any portion of the court of appeals's decision that is undermined by the bill. The court will deny Mountain Crest's motion for reconsideration.

## MOTION TO DISMISS

Mountain Crest is raising claims under Section 1 and Section 2 of the Sherman Act as well as a claim for unjust enrichment under Wisconsin common law. Section 1 applies to conspiracies in restraint of trade. 15 U.S.C. § 1. Section 2 applies to monopolies. 15 U.S.C. § 2. Although § 1 and § 2 are criminal laws, "any person . . . injured in his business or property" because of a violation of those laws may bring a civil action. 15 U.S.C. § 15(a).

The court of appeals identified two types of conduct alleged in the complaint that are not barred by the act of state doctrine: (1) "antecedent and allegedly deliberate acts to bring about the six-pack rule"; and (2) "a pattern of other marketing and distribution practices that . . . disfavor[ed] American products, including Mountain Crest's product." *Mountain Crest*, 937 F.3d at 1086. Defendants' motion to dismiss challenges Mountain's Crest's claims based on both types of conduct.[2]

_____

[2] In addition to challenging the merits of Mountain Crest's claims, defendants raise secondary and relatively brief arguments about whether the United States is the proper forum for this case under the doctrines of comity and forum non conveniens. But defendants' comity

## A. Acts leading up to the six-pack rule

The court of appeals identified three acts discussed in the complaint related to alleged attempts to promote the six-pack rule. First, Labatt Breweries of Canada and Molson Inc. (Canada) pressured the LCBO through a group boycott, restricting the supply of beer to the LCBO. Second, Anheuser-Busch and Molson Coors threatened to sue the LCBO under the North American Free Trade Agreement. Third, BRI offered small ownership stakes to all Ontario-based brewers to dissuade them from opposing the six-pack rule. Although defendants seek dismissal of all three claims, Mountain Crest discusses only the group boycott in its opposition brief, so the court will assume that Mountain Crest has abandoned any challenges based on defendants' threat to sue or offer of ownership stakes.[3]

The court of appeals described the alleged boycott as follows: "Labatt and Molson refused to supply additional six packs of beer beyond what the LCBO already had, to provide packages of their beer in cases larger than a six pack, or to provide any beer in cans." *Mountain Crest*, 937 F.3d at 1073. Defendants' arguments for dismissing the group boycott claim focus on the LCBO's involvement: the boycott doesn't give rise to an antitrust claim against

---

argument rests entirely on a test that neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has adopted. *See In re Vitamin C Antitrust Litig.*, 837 F.3d 175, 183 (2d Cir. 2016), *vacated and remanded sub nom. Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865 (2018). And defendants' forum non conveniens argument is not well developed. So the court concludes that defendants have not satisfied their "heavy burden" to show that Mountain Crest should have filed this case in Canada rather than in Mountain Crest's home district. *See In re Factor VIII or IX Concentrate Blood Products Litigation*, 484 F.3d 951, 955–56 (7th Cir. 2007) ("[W]hen the plaintiff has sued in his or her home forum, there is a strong presumption in favor of that choice. Under those circumstances, a defendant invoking forum non conveniens bears a heavy burden in opposing the plaintiff's chosen forum." (internal quotation marks, citations, and alterations omitted)).

[3] Even if Mountain Crest hadn't abandoned those aspects of its claim, the court would conclude that they fail for the same reasons as the challenge to the group boycott.

defendants because the boycott did not harm Mountain Crest, and the only alleged indirect harm—the six-pack rule—was imposed by the LCBO and the Ontario government, not defendants. Defendants rely on several related doctrines to make this argument.

### 1. *Noerr-Pennington* doctrine

Defendants invoke the *Noerr-Pennington* doctrine, which "extends absolute immunity under the antitrust laws to businesses and other associations when they join together to petition legislative bodies, administrative agencies, or courts for action that may have anticompetitive effects." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 841 (7th Cir. 2011) (internal quotation marks and citations omitted).[4] Because Mountain Crest is alleging that defendants were using the boycott to influence the LCBO, defendants say that they are entitled to immunity under *Noerr-Pennington*.

Mountain Crest says that *Noerr-Pennington* doesn't apply when a defendant's conduct is a group boycott, citing *Federal Trade Commission. v. Superior Court Trial Lawyers Association*, 493 U.S. 411 (1990) (*SCTLA*). Mountain Crest is right, but only to a point.

In *SCTLA*, an association of criminal defense lawyers refused to represent any more clients for the District of Columbia until the district enacted legislation that increased the lawyers' compensation. The federal government sued, contending that the association's conduct was a group boycott that qualified as a restraint of trade. The Supreme Court agreed and rejected the association's assertion of immunity under *Noerr-Pennington*. The Court explained that *Noerr-Pennington* applies when "the alleged restraint of trade was the intended

---

[4] The doctrine gets its name from two Supreme Court cases that applied it, *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

*consequence* of public action;" it does not apply when a "boycott was the *means* by which [the defendants] sought to obtain favorable legislation." *Id.* at 424–25. Applying that principle to the case before it, the Court observed that "[t]he restraint of trade that was implemented while the boycott lasted would have had precisely the same anticompetitive consequences during that period even if no legislation had been enacted." *Id.* at 425.

*SCTLA* makes it clear that defendants aren't entitled to immunity for a claim based on harm caused by the alleged boycott itself. The Court of Appeals for the First Circuit has stated the rule succinctly: "private actors who conduct an economic boycott violate the Sherman Act and may be held responsible for direct marketplace injury caused by the boycott, even if the boycotters' ultimate goal is to obtain favorable state action." *Sandy River Nursing Care v. Aetna Cas.*, 985 F.2d 1138, 1142 (1st Cir. 1993). So if Mountain Crest could point to an injury caused by the boycott, it could seek damages for the boycott. But Mountain Crest hasn't done that. After all, the alleged boycott wasn't against Mountain Crest, it was against the LCBO. And the boycott involved defendants withholding their *own* products from the LCBO, not Mountain Crest's products. Mountain Crest identifies no way it suffered as a result of that alleged conduct. If anything, limiting the supply of defendants' beer would give Mountain Crest an opportunity to sell more beer to the LCBO.

As the court of appeals recognized, Mountain Crest's challenge to the boycott "raise[s] significant questions of causality." *Mountain Crest*, 937 F.3d at 1086. Mountain Crest's theory is not that it was harmed directly by the boycott but that the boycott induced the LCBO to enact the six-pack rule, which limited Mountain Crest's sales by preventing it from providing discounts for higher-volume sales. But Mountain Crest can't challenge the six-pack rule directly because of the act of state doctrine. So the question is whether Mountain Crest can maintain

an antitrust claim based on an alleged group boycott that caused it no direct harm but that Mountain Crest says set off a chain of events that hurt Mountain Crest's sales in Ontario.

*SCTLA* provides little guidance in answering that question because there were no issues of causation in that case. The plaintiff was representing the interests of the District of Columbia, which was directly harmed by the group boycott. Other cases more similar to this one suggest that a private defendant cannot be held liable for an alleged antitrust violation when the harm was caused directly by the government, even if the defendant "improperly" influenced the government. In that situation, the government's conduct is a supervening cause that breaks the link between the defendant and any injury the plaintiff suffered. *See Associated Bodywork & Massage Professionals v. Am. Massage Therapy Ass'n*, 897 F. Supp. 1116, 1120 (N.D. Ill. 1995) ("Although Defendant may have encouraged the legislatures' actions, the choice to enact massage therapy regulations constituted an independent governmental choice, comprising a supervening 'cause,' and breaking the link between Defendant's actions and any injury Plaintiff may have suffered."); 1A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law § 202c  (4th ed. 2015).

*Sandy River Nursing Care* is a good example. In that case, the plaintiffs alleged that a group of insurance companies used a group boycott to coerce the state legislature into allowing them to charge higher rates for workers' compensation insurance. When a group of employers sued the insurers for antitrust violations, the court concluded that the boycott was a restraint of trade and that *Noerr-Pennington* did not provide immunity for the boycott. But, as in this case, the plaintiffs in *Sandy River Nursing Care* weren't claiming damages for the boycott itself. 985 F.2d at 1143. Rather, they contended that the boycott coerced the state legislature into allowing higher rates, which the defendants then imposed. The court rejected that claim,

10

holding that the legislation was an act of the legislature, not the insurers. The court also rejected the argument that the higher rates could be attributed to the insurers because they used "unlawful activity to coerce the favorable legislation," reasoning that the legislature's motive was irrelevant. *Id.* at 1144.

*Sandy River Nursing Care* is not identical to this case because the court relied on the principle that the "Sherman Act d[oes] not apply to anticompetitive restraints imposed by the States 'as an act of government.'" *Id.* (quoting *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991)). But that principle, which is called "state action immunity," is similar to the act of state doctrine. Both doctrines rest on the principle that the Sherman Act doesn't reach conduct of a sovereign, whether domestic or foreign. The important point is the same: there is no liability under the Sherman Act when the "only anticompetitive injuries that [the plaintiff] complains of are the direct result of governmental action." *Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*, 17 F.3d 295, 300–01 (9th Cir. 1994).

This is not simply an issue of immunity. Rather, it is a basic question of causation. *See* Arreda & Hovenkamp ¶201a ("Setting aside the Constitution and the substantive meaning of the statute, when the anticompetitive harm results from the government action . . . then the government itself becomes the 'cause' of action."). The court in *Sessions Tank* recognized this. Allowing parties to assert antitrust claims for private conduct alleged to have caused the government to impose a restraint of trade "would entail deconstructing the decision-making process to ascertain what factors prompted the various governmental bodies to erect the anticompetitive barriers at issue." *Id.* at 301.

In this case, the deconstruction process would be complicated by an additional factor. Specifically, when Mountain Crest entered the Ontario market in 2009, it had already been

nine years since the LCBO had officially adopted the six-pack rule in the 2000 agreement.[5] And Mountain Crest doesn't contend that defendants can be held liable for anything that happened before 2000. So this is not a situation in which the plaintiff is alleging that a group boycott caused the government to *adopt* an anticompetitive policy. In other words, Mountain Crest's theory is not that defendants' alleged group boycott caused any change in government policy; rather, Mountain Crest's theory is that the boycott persuaded the Ontario government to retain a policy that had already been in place for nearly a decade, if not longer. *See Hughes v. Liquor Control Bd. of Ontario*, 2018 CarswellOnt 3969, para. 157 (Can. Ont. S.C.J.) (WL) ("The LCBO would have needed the Provincial Government's approval to change this status quo, and the Government refused to grant such approval."). This makes the alleged causal connection between defendants' conduct and Mountain Crest's harm even more attenuated than in other cases involving the *Noerr-Pennington* doctrine.

So Mountain Crest is correct that the *Noerr-Pennington* doctrine does not provide unequivocal support to defendants because, under *SCTLA*, a group boycott against the government is not entitled to immunity. But, as the other cases and authorities cited above demonstrate, *Noerr-Pennington* is about more than simply immunizing protected conduct. It is also a recognition of both the evidentiary and policy-based reasons for limiting antitrust liability when anticompetitive harm is the direct result of government action. Applying those

---

[5] In fact, as noted in one of the attachments to Mountain Crest's complaint, even in 2000, the LCBO recognized that the six-pack rule was "[c]onsistent with historical practice." Dkt. 49-14. *See also Hughes v. Liquor Control Bd. of Ontario,* 2018 CarswellOnt 3969, para. 157 (Can. Ont. S.C.J.) (WL) *aff'd* 145 O.R.3d 401 (Can. Ont. C.A.). ("The 2000 Beer Framework Agreement did not change much in the way that the LCBO and Brewers Retail each operated. . . . Both before and after the Agreement was adopted, government policy precluded the LCBO from selling 12-packs and 24-packs at Ordinary Stores.").

reasons to the facts of this case supports a conclusion that Mountain Crest cannot maintain an antitrust claim against defendants based on the group boycott. But the court need not rest its decision on *Noerr-Pennington* because there are other causation doctrines that point to the same result.

### 2. Other causation doctrines

Apart from their reliance on *Noerr-Pennington*, defendants say that there are three other causation-related problems for any antitrust claim based on the group boycott: (1) Mountain Crest's injury is not "fairly traceable" to defendants' conduct, as required by Article III of the Constitution; (2) Mountain Crest has not satisfied the requirements for an "antitrust injury," as required for its claims under both § 1 and § 2 of the Sherman Act; and (3) Mountain Crest has not satisfied the requirement in the Foreign Trade Antitrust Improvements Act of 1982 (FTAIA), 15 U.S.C. § 6a, to allege a "direct" injury on domestic export commerce.

Defendants' first argument is about constitutional standing, which requires the litigant to show that he has suffered a concrete and particularized injury that is fairly traceable to the defendants' conduct and is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants rely on the proposition that the plaintiff's injury is not fairly traceable to the defendant if the injury is "the result of the independent action of some third party not before the court." *Id.* (internal quotation marks and alterations omitted). Defendants say that Mountain Crest's injury is the result of the LCBO, not defendants, so Mountain Crest doesn't have standing. Mountain Crest doesn't respond to this argument in its opposition brief; it doesn't address constitutional standing at all. That could be reason enough to dismiss this claim. *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [courts] are given plausible reasons for dismissing a

13

complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

Having said that, the causation requirement for standing is fairly liberal; it doesn't require a showing of proximate cause. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("While . . . it does not suffice if the injury complained of is the result of the independent action of some third party not before the court, that does not exclude injury produced by determinative or coercive effect upon the action of someone else." (internal quotation marks and alterations omitted)). But even if the court assumes that Mountain Crest has standing to sue, that doesn't mean it meets the requirements to sue under the Sherman Act. *See McGarry* & *McGarry, LLC v. Bankr. Mgmt. Sols., Inc.,* 937 F.3d 1056, 1063 (7th Cir. 2019) (concluding that plaintiffs had standing but failed to prove causation under the Sherman Act).

Two causation requirements for antitrust claims are relevant to this analysis. First, "Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action," so courts have required "the plaintiff [to] demonstrate[] [a] direct link between the alleged antitrust violation and the claimed antitrust injury." *Id.* at 1064 (internal quotation marks omitted). For example, in *McGarry and McGarry*, the court held that the plaintiff could not bring a claim under the Sherman Act because its alleged injury was "entirely derivative" of the injury of a third party, who the court said was "a more appropriate person to pursue the claim." Defendants make the same argument in this case, contending that Mountain Crest's injury is derivative of the injury to the LCBO, so the LCBO, as the target of the alleged group boycott, is the proper plaintiff, if any.

Second, the FTAIA imposes additional limits on Sherman Act claims that are based on anticompetitive conduct in a foreign country. For the purpose of this case, Mountain Crest

14

must show that the group boycott had a "direct, substantial, and reasonably foreseeable effect" on exports from the United States. 15 U.S.C. § 6a(1)(b). "Direct" in this context means "proximate cause." *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 856–57 (7th Cir. 2012). "Just as tort law cuts off recovery for those whose injuries are too remote from the cause of an injury, so does the FTAIA exclude from the Sherman Act foreign activities that are too remote from the ultimate effects on U.S. domestic or import commerce." *Id.* at 857. Defendants contend that the LCBO's six-pack rule, not the group boycott, was the proximate cause of the harm alleged by Mountain Crest in this case.

Again, Mountain Crest doesn't meaningfully respond to defendants' arguments on causation. It says that defendants committed "myriad" antitrust violations that were "independent of Ontario's regulatory scheme," Dkt. 85, at 23, but it doesn't explain how the group boycott harmed it other than as a barrier to removing the six-pack rule.

Mountain Crest also relies on *United States v. Sisal Sales Corp.*, 274 U.S. 268 (1927), for the proposition that defendants are not "absolve[d]" simply because "they were assisted by an act of state." Dkt. 85, at 23. But Mountain Crest is conflating issues. The court of appeals relied on *Sisal Sales* to hold that the act of state doctrine does not "bar an antitrust complaint where defendants took deliberate acts to bring about forbidden results simply because the anticompetitive conspiracy was aided by discriminatory legislation." *Mountain Crest*, 937 F.3d at 1085–86 (internal quotation marks and alterations omitted). This principle would allow Mountain Crest to bring a claim for an antitrust injury caused by the alleged group boycott. But *Sisal Sales* isn't about causation, and the facts of that case aren't helpful for Mountain Crest. The alleged harm in that case was a monopoly controlled by the defendant; the

"discriminatory legislation" facilitated defendants' conduct but was not a direct cause of the harm.

Mountain Crest's only discussion in its brief of a "direct effect" is a reference to past litigation by Miller Brewing Company against Molson Coors, but Mountain Crest doesn't explain how that litigation is connected to the group boycott or to its own injuries.

The bottom line is that Mountain Crest hasn't pointed to any direct harm it suffered as the result of the group boycott. So the court will dismiss this claim with prejudice.

## B. Marketing and distribution practices

Neither Mountain Crest's brief nor its complaint enumerates the marketing and distribution practices it is challenging. But it doesn't take issue with the list provided by defendants: (1) BRI's failure to stock Mountain Crest's beer in sufficient quantities; (2) BRI's decision to give the store's top selling beers a more prominent display; (3) BRI's decision to discontinue its practice of allowing brewers to pay for in-store advertisements; (4) the layout of BRI's stores; and (5) fees charged to brewers by BRI. The court understands Mountain Crest to be challenging these practices under both § 1 and § 2 of the Sherman Act as restraints on trade and an attempt to create a monopoly.

Causation does not appear to be a problem with these challenged practices. Mountain Crest alleges that it was directly harmed, either through loss of sales, or, in the case of fees, as a result of direct payments. Defendants challenge these claims on numerous grounds, some of which apply only to a subset of the claims.[6] But a problem common to all of the claims is that Mountain Crest hasn't identified any participation by *defendants* in the alleged practices.

---

[6]  For example, defendants say that BRI is an integrated joint venture, so it is "incapable" of engaging in a conspiracy; Mountain Crest has failed to define the relevant market; Mountain Crest hasn't identified an agreement that is "per se" illegal; a joint monopolization claim is not

All of these claims relate to practices of BRI, a cooperative of Ontario brewers, not defendants. Mountain Crest alleges that BRI is controlled by Labatt Breweries of Canada and Molson Inc. (Canada), but even if BRI's conduct could be imputed to Labatt and Molson, those are Canadian subsidiaries of defendants. And it is well established that parent companies generally cannot be held liable for the conduct of their subsidiaries. *See Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 820 (7th Cir. 2015) ("[C]orporate formalities should be respected unless one of the recognized justifications for piercing the veil, or otherwise deeming a parent and a subsidiary one, is present."); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts.").

Mountain Crest devotes half of a page to its argument that it has "pled facts which directly implicate the named defendants." Dkt. 85, at 28. But instead of explaining how it has done that, it simply refers the court to "rows [of] citations" in the complaint without elaboration. *Id* (citing ¶¶ 25–26, 79, 82–84, 86–88, 90, 98, 110–112, 118, 130, 142–145, ¶ 147–50, 152–154, 160, 162, 166, 168, 177–178, 180–183, 187, 192–195, 197–98, 201–03, 206, 210, 213). "It is not the job of this court to develop arguments" for the parties. *Fabriko Acquisition Corp. v. Prokos,* 536 F.3d 605, 609 (7th Cir. 2008). *See also McKevitt v. Pallasch, 339 F.3d 530,* 533 (7th Cir. 2003) (string cite unaccompanied by explanation not sufficient to preserve argument). In their opening brief, defendants went through the allegations in the

---

cognizable under § 2 of the Sherman Act; and the complaint includes no facts showing an intent to monopolize. Dkt. 76, at 34–42.

complaint, explaining why they believed that the allegations weren't sufficient to show defendants' involvement. To support a contrary view, Mountain Crest must do more than direct defendants and the court to review the 93-page complaint again.

In any event, the paragraphs cited by Mountain Crest do not tie defendants to the alleged marketing and distribution practices, let alone identify an agreement between defendants to adopt those practices. Rather, the vast majority of the allegations relate to attempts to influence the LCBO or the decision to offer ownership interests in the BRI to smaller Ontario breweries. Mountain Crest doesn't point to any allegations describing a conspiracy between defendants directing BRI to understock certain brands, to change the layout of its stores, or to charge importers a discriminatory fee.

Mountain Crest does cite some allegations about defendants' involvement that are broad enough to include the marketing and distribution practices. For example, Mountain Crest alleges that executives for defendants "conspired . . . to continue and enforce the restraints on U.S. export sales to Ontario," Dkt. 49, ¶ 160, "worked closely . . . on maintaining their price fixing and market allocation restraints to limit competing brewers' ability to export beer to Ontario," *id.*, ¶ 181, and "conspired to continue and enforce the restraints,"*id*., ¶ 187. But those allegations are so broad and conclusory that they cannot be accepted as true.

It is well established that legal conclusions are not enough to satisfy federal pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "[A] complaint must be dismissed unless it contains a plausible claim." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). This means that the complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the

18

speculative level." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.*, 536 F.3d 663, 667–68 (7th Cir. 2008) (internal quotation marks omitted).

Courts apply the plausibility requirement with added rigor in the context of complex cases: "[t]he required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616B17 (7th Cir. 2011). This is in part because of the added burdens associated with defending a complex claim. *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 574 (7th Cir. 2009) ("[T]he complaint in a complex case must, to avert dismissal for failure to state a claim, include sufficient allegations to enable a judgment that the claim has enough possible merit to warrant the protracted litigation likely to ensue from denying a motion to dismiss."); *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 802–03 (7th Cir. 2008 ("[A] defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case."). Conspiracy allegations are also reviewed carefully because they are so easy to allege and so hard to prove. *See Cooney v. Rossiter*, 583 F.3d 967, 970–71 (7th Cir. 2009). Even at the pleading stage, it is "essential to show that a particular defendant joined the conspiracy and knew of its scope." *Knight*, 725 F.3d at 818.

It was an antitrust case that gave rise to the plausibility requirement. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, the Court could not have been clearer: "a bare assertion of conspiracy will not suffice." *Id.* at 556. Because that is all that Mountain Crest offers in this case, it has not stated a plausible claim.

Mountain Crest identifies two other theories in its complaint for holding defendants liable. First, Mountain Crest invokes the concept of "enterprise liability," under which parents and subsidiaries can be viewed as a single "enterprise" for the purpose of antitrust violations.

But Mountain Crest doesn't respond to defendants' argument that no court has recognized such a theory under the Sherman Act, and Mountain Crest doesn't explain in its brief why the court should adopt the theory in this case. Second, Mountain Crest refers to "single-factor piercing" of the corporate veil, Dkt. 49, ¶ 237, without explaining what that means. But Mountain Crest doesn't attempt to defend that theory in its brief. Instead, it insists that "none of [its] allegations are aimed at any of Defendants' subsidiaries." Dkt. 85, at 28. So the court concludes that Mountain Crest has abandoned both of these theories, and the court declines to consider them.

When a plaintiff fails to plead adequate facts, the general rule is that a plaintiff should have at least one opportunity to amend its complaint. But Mountain Crest has already amended its complaint twice. *See* Dkt. 30 and Dkt. 49. It did not ask for leave to amend its complaint after the remand, and it does not request leave to amend now. Under these circumstances, the court sees no reason to give Mountain Crest leave to replead. *See Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 829 (7th Cir. 2019) (plaintiffs "have never requested leave to amend," so "[t]hey . . . waived any right to replead"). The court will dismiss these claims with prejudice.

## C.  Unjust enrichment

This leaves Mountain Crest's claim for unjust enrichment under Wisconsin common law. That claim has three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. *Buckett v. Jante*, 2009 WI App 55, ¶ 10, 316 Wis. 2d 804, 812, 767 N.W.2d 376, 380. Mountain Crest alleges that it conferred a benefit

on "defendants" by paying listing fees to BRI and that it would be inequitable to allow defendants to keep the fees because of the alleged restraints of trade alleged in the complaint.

Defendants contend that the unjust enrichment claim must be dismissed if the antitrust claims are dismissed because the alleged antitrust violations are Mountain Crest's only basis for contending that defendants were unjustly enriched. Mountain Crest doesn't respond to this argument. In any event, the fees at issue in this claim went to BRI, not defendants, so defendants are not a proper party. *See State Mech. Servs., LLC v. NES Equip. Servs. Corp.*, No. 17-cv-5950, 2018 WL 2193248, at *5 (N.D. Ill. May 14, 2018) (plaintiff may not sue parent company for benefit conferred on subsidiary). The court will dismiss this claim as well.

## D. Conclusion

The allegations in the complaint make it clear that Mountain Crest's claims relate solely to events in Canada and conduct by Canadian entities that are not before this court. The alleged group boycott by defendants did not cause Mountain Crest any harm. Rather, the harm Mountain Crest is complaining about is the direct result of decisions by the Ontario government. And the marketing and distribution policies at the Beer Store were put in place by BRI, which is controlled by defendants' subsidiaries, not defendants. So Mountain Crest has sued the wrong parties.

Mountain Crest may have had good reasons for not bringing claims against a foreign provincial government, an Ontario cooperative, and defendants' Canadian subsidiaries. But whatever substantive or procedural barriers those claims would have faced, it does not give Mountain Crest a cause of action against defendants. Mountain Crest hasn't plausibly alleged that defendants caused it any harm, so the court will dismiss the complaint with prejudice.

ORDER

IT IS ORDERED that:

1. Plaintiff Mountain Crest SRL, LLC's motion for reconsideration, Dkt. 73, is DENIED.

2. The motion to dismiss filed by defendants Anheuser-Busch InBev SA/NV and Molson Coors Brewing Compan,  Dkt. 76, is GRANTED, and this case is DISMISSED with prejudice.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered April 24, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge